Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7196 | **DATE** | 7/8/2002 |
| **CASE TITLE** | Katherine Kerr vs. W G N | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  W G N's motion for summary judgment is granted. Trio Video's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 09 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 40 |
| | Copy to judge/magistrate judge. | | | |
| EF | courtroom deputy's initials | 02 JUL -8 PM 5:24 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHERINE KERR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 01 C 7196 |
| ) | HONORABLE CHARLES R. NORGLE |
| WGN CONTINENTAL ) | |
| BROADCASTING CO.; and TRIO ) | |
| VIDEO, INC., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

DOCKETED
JUL 0 9 2002

CHARLES R. NORGLE, District Judge

Before the court are Defendants' motions for summary judgment. For the following reasons, WGN's motion for summary judgment is granted, and Trio Video's motion for summary judgment is denied.

## I. BACKGROUND

Katherine Kerr brought suit against Defendants claiming violations of Title VII based on a hostile work environment and retaliation. Both WGN and Trio Video have moved for summary judgment, arguing that they are entitled to summary judgment because they are not Kerr's employer. The court outlines the relevant facts below.

WGN is a broadcasting company. As part of its business, WGN owns a television station that broadcasts locally in the Chicago area and nationally through cable television. Part of WGN's operation includes televising games played by the Chicago Cubs, Chicago White Sox, and Chicago Bulls. WGN is not the exclusive broadcaster for the games played by these teams, as other networks, such as ESPN and Fox Sports Net Chicago also broadcast their games.

40

In order to broadcast sporting events, WGN uses a mobile production facility, commonly known as a broadcast truck, which contains the equipment necessary to broadcast live from the stadiums where the games are being played. WGN does not own the broadcast trucks it uses for sporting events. Instead, WGN contracts with Trio Video, where Trio Video provides WGN with broadcast trucks and related production personnel. Trio Video and WGN have had such contracts for a number of years.

In the early 1990's Katherine Kerr began working for Trio Video on a freelance basis. Kerr and Trio Video executed an independent contractor agreement that set the terms of their relationship. At the beginning, Kerr's work with Trio Video was sporadic and short term, but Kerr eventually obtained regular work with Trio Video.

In 1994, Trio Video changed its relationship with Kerr, and sent her a letter explaining the reasons for and consequences of the change. The letter explained that governmental taxing agencies had been questioning the classifications of free lance workers in the video and entertainment industries. The letter went on to explain that Kerr would be an employee of Trio Video, and that Trio Video would be withholding income taxes, paying the employer's share of social security taxes, and providing worker's compensation insurance coverage for Kerr. Trio Video and Kerr dispute the ultimate effect of this letter on Kerr's status as an independent contractor.

Kerr's job was that of a television stage manager, which is also known as an assistant director. In performing her duties, Kerr would sit in the broadcast booth during games and assist with the coordination of the show. Kerr was responsible for providing the broadcasters with current information about the game, such as pitching and lineup changes. Kerr also advised the broadcasters whether they were on or off the air, and provided promotional materials and cues to the broadcasters

for on-air readings. Where Kerr was positioned in the broadcast booth, she sat in front of video monitors that received images from cameras throughout the venue. Kerr also wore a headset/microphone to communicate with other production personnel, and necessarily heard all their communications.

Kerr alleges that she was sexually harassed when she worked Cubs home games, played at Wrigley Field in Chicago. According to Kerr, the camera operators would take gratuitous footage of female spectators and show that footage repeatedly on video monitors within Kerr's sight. Kerr also claims that the camera operators would engage in overtly sexual conversations on their communication equipment, which Kerr had no choice but to overhear. Kerr has alleged a litany of instances in which she was subject to viewing and hearing sexually oriented material. All of these instances occurred during Cubs home games, and Kerr makes no allegation of any improper conduct during any other broadcasts that she worked.

As noted above, WGN is not the exclusive broadcaster for Cubs home games. WGN broadcast approximately 50% of the home games, with Fox Sports Net Chicago broadcasting the other 50%. Kerr's duties were not limited to WGN broadcasts, as she also worked games that were broadcast by Fox Sports Net Chicago and ESPN.

Kerr claims that in June of 2000 she complained to both WGN and Trio Video about the harassment. According to Kerr, her complaints had no effect on the allegedly hostile environment, and she encountered resistance when she complained to a WGN senior producer. Kerr alleges that on October 11, 2000, WGN informed Trio Video that WGN no longer wanted to use Kerr as a stage manager. Subsequently, Kerr alleges that Trio Video terminated her.

Both WGN and Trio Video move for summary judgment, arguing that Kerr was not their employee. According to both Defendants, the absence of an employee/employer relationship relieves them of liability. Kerr counters that an employment relationship is not necessary for a Title VII claim, and even if it were, there are questions of fact surrounding her employee status with both WGN and Trio Video. The court addresses all of these argument in turn.

## II. DISCUSSION

### A. Standards for summary judgment:

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events"). A defendant is entitled to put the plaintiff to his proofs, and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries. Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id.

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment.

See Fed. R. Civ. P. 56(c), see also, Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), see also, First Nat'l. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**B. Kerr's Employee Status:**

Title VII liability is limited to "employers" as that term is used in the statute. See e.g. Ost v. West Suburban Travelers Limousine, Inc., 88 F. 3d 435, 437-38 & n. 1 (7th Cir. 1996) (noting earlier jurisprudence that treated the existence of an employer as a jurisdictional prerequisite to a Title VII suit). WGN and Trio Video argue that they cannot be liable for any alleged harassment because Kerr was an independent contractor rather than an employee.

The existence of an independent contractor relationship is a question of law for the court to decide. See Aberman v. J. Abouchar & Sons, Inc., 160 F.3d 1148, 1150 (7th Cir. 1998); E.E.O.C. v. North Knox, 154 F.3d 744, 747 (7th Cir. 1998); E.E.O.C. v. Foster Wheeler Const., Inc., No. 98 C 1601, 1999 WL 515524, at * 5 (N.D. Ill. July 14, 1999). But, like many questions of law, the court must determine the question in light of the facts at hand. See E.E.O.C. v. North Knox, 154 F.3d at 747 ("The ultimate question of whether an individual is an employee or an independent contractor is a 'legal conclusion' which involves 'an application of the law to the facts.'") (quoting Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377, 39 (7th Cir. 1991)). Both WGN and Trio Video frame their arguments under agency principles to determine independent contractor status. See e.g. Hojnacki v Klein-Acosta, 285 F.3d 544, 549-50 (7th Cir. 2002); Alexander v. Rush North Shore

Med. Ctr., 101 F.3d 487, 492 (7th Cir. 1996); Ost, 88 F. 3d at 437-38. WGN also makes an alternative argument that it was not Kerr's employer under the payroll test.

### 1. Agency Principles:

Common law agency principles are often used to determine the existence of an agency relationship. The analysis examines: (1) the extent of the purported employer's control over the worker; (2) the type of occupation and the nature of the skills required to perform the required duties; (3) the party that bears the cost of and responsibility for the equipment required to perform the job; (4) the source of the worker's pay and benefits; and (5) the duration of the job and commitments. See Hojnacki, 285 F.3d at 549-50 (7th Cir. 2002); Alexander, 101 F.3d at 492; Ost, 88 F. 3d at 437-38. No single factor is dispositive, and the court is to examine all of the factors together.

#### a. Control:

Of all the factors, control is the single most important. See Alexander, 101 F.3d at 492. The type of control is critical, for freedom of contract permits contracting parties to "control" each other by detailing obligations in their agreement. See e.g. Hojnacki, 285 F.3d at 551. Such control is different in kind from the type of discretionary daily control that employers routinely exert over employees. Id. Absent discretionary routine control over daily activities, including authority "to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved," courts will not find an employment relationship. Alexander, 101 F.3d at 493 (internal quotes and citations omitted).

This factor demonstrates that Trio Video may have exercised control over Kerr, but that WGN did not. The court recognizes that during game broadcasts, Kerr took direction from WGN personnel concerning duties and deadlines. That alone is not sufficient control to tip this factor in

Kerr's favor. WGN's control over Kerr's work existed only while WGN required the services of Trio Video and Kerr. There is nothing in the record to demonstrate that WGN exercised any discretionary control over Kerr's activities outside of the contractual relationship between WGN and Trio Video. Instead, Trio Video and WGN agreed that Trio would provide a broadcast truck and crew to WGN for sporting events. Kerr was usually assigned to the WGN jobs, and when so assigned, she received her duties and direction from WGN personnel. This type of relationship exemplifies the freedom of contract that the Seventh Circuit spoke of in Hojnacki. See 285 F.3d at 551-32; see also E.E.O.C. v. North Knox School, 54 F.3d at 748 (discussing freedom of contract and employer control). The control that WGN exercised over Kerr stems from the contract between WGN and Trio Video, and not from any employment relationship between Kerr and WGN.

Another aspect of WGN's lack of control over Kerr is that Kerr also worked Cubs home games that were broadcast by Fox Sports Net Chicago. Those games account for half of all Cubs home games. During those games, WGN could exercise absolutely no control over Kerr, or any other production personnel. Given that there are 81 Cubs home games per season, and that WGN broadcasts only about 40 of those games, it is a stretch to say that WGN controlled Kerr's daily activities to the extent that she should be considered an employee of WGN.

The facts show that Trio Video arguably exercised control over Kerr's daily activities. Trio Video needed Kerr to work according to the scheduled needs of Trio's clients, whether the client was WGN or another network. Trio required Kerr to commit to working the entire baseball season in order to receive the assignment to work Cubs home games. Kerr had to work all such games, and needed permission from Trio Video if she needed to be off of work on a scheduled game day. Trio also gave Kerr performance reviews, which were based on feedback received from Trio's clients.

7

Trio Video makes the argument that WGN, rather than Trio, controlled Kerr's daily activities because Kerr took direction from WGN personnel during WGN broadcasted games. That argument fails because, as explained above, WGN's control over Kerr was founded upon the contract between it and Trio Video, rather than any employment relationship with Kerr.

**b.   Skills Necessary:**

Highly skilled positions, particularly where the skills are learned outside of a particular job setting, are generally held by independent contractors rather than employees. See e.g. Hojnacki, 285 F.3d at 550. By contrast, an employment relationship is more likely to exist if an entity provides training for its workers to perform necessary tasks.

This factor does not carry much weight in this case. Kerr asserts that she received training from WGN personnel at the insistence of both WGN and Trio Video. Both Defendants point out that Kerr had an education tailored for television production, and that Kerr has referred to herself as the premier stage manager for Cubs home games. Neither side presents sufficient evidence for the court to make a meaningful determination of this factor.

**c.   Cost and Place of Performing Job:**

When a person bears the costs of performing a job, such as purchasing the tools of the trade, that person is more likely to be found to be an independent contractor. See Aberman, 160 F.3d at 1151; see also Ost, 88 F.3d at 438 (finding that a limousine driver who owned her own car was an independent contractor). This factor weighs in favor of Kerr being an employee of Trio Video.

The parties agree that Kerr needed minimal equipment to perform her stage manager job, consisting of a communication box and a headset. Per the contract between WGN and Trio Video, Trio Video was required to provide both a stage manager and the equipment necessary for the stage

8

manager to do the job. Kerr chose to use her own communication equipment, and also purchased a pair of binoculars for use on the job. This election by Kerr, however, did not relieve Trio Video of the obligation to provide equipment for Kerr to perform her job. Again, Trio Video contracted with WGN to provide equipment and personnel to meet WGN's needs. Trio Video bore the obligation and cost of providing that equipment, notwithstanding that Kerr chose to use some of her own communication equipment in place of Trio's equipment. For its part, WGN provided no equipment to either Kerr or Trio Video. Thus, this factor also provides support for finding that Trio Video was Kerr's employer.

### d. Source of Income and Benefits:

This factor weighs in favor of Kerr being an employee of Trio Video. Generally, a worker will be considered an employee of a company when the company pays the person a set wage, and treats the person as an employee for tax purposes. See Worth v. Tyer, 276 F.3d 249, 264 (7th Cir. 2001) (noting that the court must consider the putative employee's tax status) (citing Spirides v. Reinhardt, 613 F.2d 826, 832 (D.C. Cir. 1979)). Here, WGN did not pay Kerr directly. Instead WGN paid Trio Video a pre-determined daily rate for the use of Trio's broadcast truck and accompanying personnel.

Prior to 1994, Kerr worked with Trio Video pursuant to an independent contractor agreement they executed. Both parties agree that under the independent contractor agreement, Kerr was a free lance stage director that was not employee of Trio Video. Trio Video did not withhold income taxes from Kerr's checks, and similarly did not pay the employer's share of social security taxes. Kerr did not receive a W-2 form from Trio, instead, she received an IRS 1099 form reflecting miscellaneous income.

9

The relationship between Kerr and Trio Video changed in 1994, when Trio Video stated that it considered Kerr to be a "daily hire" employee from that point forward, and began withholding income taxes from Kerr's paychecks, and also began paying its share of social security taxes.[1] Trio Video also provided worker's compensation insurance coverage for Kerr and paid into an unemployment compensation plan covering Kerr. These facts support Kerr's position that her independent contractor status changed in 1994, and she became an employee of Trio Video. Trio Video's mention of Kerr as a "daily hire" employee does not change the fact that Trio Video treated Kerr as a traditional employee for tax purposes, and provided Kerr with unemployment and worker's compensation benefits.

Trio Video argues that the lack of other benefits, such as life insurance and health benefits, indicate that Kerr's status as an independent contractor remained unchanged. The authority for Trio Video's argument is Hollingsworth-Hanlon v. Alliance Francaise of Chicago, No. 97 C 6841, 1998 WL 341630, at *5 (N.D. Ill., June 24, 1998). In Hollingsworth-Hanlon, the court held that treating a person as an employee for tax purposes does not necessarily make that person an employee, if other factors indicate that the person is an independent contractor. Id. at *5-6. The holding was limited to its facts, and the court noted that the plaintiff's tax status supported her position that she was an employee. As a result, Hollingsworth-Hanlon does not support Trio Video's position.

e. **Duration of Job:**

The final factor is the duration of the job. An employment relationship is more likely to be found when the parties have an expectation that their relationship will continue. See Hojnacki, 285

---

[1]Trio Video's letter to Kerr explaining the taxation changes used the terms "employee" and "daily hire employee" to describe Kerr.

10

F.3d at 550. Conversely, an independent contractor relationship is likely to found where the parties know that their relationship will end upon the completion of a project, or at the end of a set amount of time. See id.

Kerr could have no expectation that she would continue to work for WGN. Kerr's job was to act as a stage manager for various networks in various sporting venues. Kerr performed stage manager services for a number of networks, including WGN, ESPN, and Fox Sports Net Chicago. Trio Video assigned Kerr to her jobs, and although she went to WGN assignments, that alone is insufficient to form a reasonable expectation that she had long term traditional employment with WGN. See E.E.O.C. v. North Knox, 154 F.3d at 750-51 (noting that successive contractual agreements do not give rise to an expectation of long term employment)

However, Kerr may have had an open-ended employment type relationship with Trio Video. Kerr received her assignments from Trio Video, and Trio Video required Kerr to commit to working the entire baseball season as a condition of receiving the assignment to be a stage manager for Cubs home games. Thus, both parties could have expected that Kerr would continue to receive such assignments. This factor weighs in favor of Kerr having an employment relationship with Trio Video.

### f. Conclusion:

In sum, the court finds that WGN is not Kerr's employer, and that questions of fact exist as to whether Trio Video had an employment relationship with Kerr. WGN exercised minimal discretionary control over Kerr's daily activities. Trio Video, on the other hand, gave Kerr her assignments, required her to commit to long term assignments, and may have otherwise exercised control over her daily activities. WGN bore none of the cost of providing necessary equipment for

11

Kerr. Trio Video bore that obligation and cost, despite the fact that Kerr chose to use some of her own equipment. WGN paid Kerr nothing. Instead, WGN paid Trio Video a contractual rate for Trio Video to provide a broadcast truck and related personnel. Trio Video paid Kerr, withheld taxes, and paid for unemployment and worker's compensation insurance for her. Finally, Kerr had no reasonable expectation of long term employment with WGN, but may have had such an expectation with Trio Video.

### 2. Payroll Method:

WGN makes an alternative argument that it was not Kerr's employer under the payroll test. The payroll test is generally used to determine whether an entity has a sufficient number of employees to qualify as a Title VII employer. See Mizwicki v. Helwig, 196 F.3d 828, 831-32 (7th Cir. 1999); Ost, 88 F.3d at 437-38. Independent contractors are not counted as employees for that inquiry. See Ost, 88 F.3d at 437-38. At the same time, several opinions use the payroll test to determine whether an employment relationship exists, because "'the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll.'" Mizwicki, 196 F.3d at 831 (quoting Walters v. Metropolitan Educational Enterprises, Inc., 519 U.S. 202, 205-07 (1997)).

The payroll test is further evidence that WGN was not Kerr's employer. As discussed above, WGN did not pay Kerr, and has no records of ever having paid Kerr directly. Instead, WGN paid Trio Video for the use of broadcast trucks and related personnel. Trio Video, in turn, paid Kerr and considered her an employee for tax purposes.

### 3. De Facto Employer:

Kerr's last argument against WGN is that WGN was her de facto employer, and is liable under an interference theory of liability. Typically, the Title VII plaintiff stands in an employer/employee relationship with the defendant, but that is not always the case. Relying on Sibley Mem. Hosp. v. Wilson, 488 F.2d 1338 (D.C. Cir. 1973), several opinions permit a plaintiff to pursue Title VII claims against an entity with which the plaintiff does not have a traditional employment relationship. See e.g. Vakharia v. Swedish Covenant Hosp., 765 F. Supp. 461, 463-69 (N.D. Ill. 1991); see also Bender v. Suburban Hosp., Inc., 159 F.3d 186, 188 & n. 1 (4th Cir. 1998) (assuming without deciding that a Title VII claim could proceed absent an employment relationship, and noting that several Circuit Courts of Appeal had adopted Sibley); Foster Wheeler Const., 1999 WL 515524, at * 9-10 (concluding that an employer/employee relationship is not necessary for a Title VII action); cf. Papa v. Katy Indus., Inc., 166 F.3d 937 (7th Cir. 1999) (analyzing when a parent corporation could be liable for the discriminatory acts of a subsidiary corporation). This view is not universal, as other opinions do not permit a Title VII claim absent an actual, or in some cases, de facto employment relationship. See Association of Mexican-American Educators v. State of California, 231 F.3d 572, 603 (9th Cir. 2000) (Gould, J., concurring in part and dissenting in part); Tyrrell v. City of Scranton, 134 F. Supp. 2d 373, 379-80 (M.D. Pa. 2001).

The Seventh Circuit's view of Sibley is unsettled, as the court has left the full scope of Sibley unanswered, and has expressly retreated from its earlier acceptance of Sibley's rule. See Alexander, 101 F.3d at 490-93; E.E.O.C. v. State of Ill., 69 F.3d 167, 169-72 (7th Cir. 1995). In E.E.O.C. v. State of Ill., the Seventh Circuit indicated in dicta that Title VII liability could lie absent an employment relationship against a "de facto" or "indirect" employer. 69 F.3d at 171. Dicta from

the Seventh Circuit is influential, and the court will assume that WGN could have Title VII liability to Kerr if WGN were Kerr's de facto employer. See id.

The standards for determining when an entity is a de facto employer are unsettled, but most courts decide the issue based on the amount of control the putative employer exercises over the worker. See Morrison v. American Bd. of Psychiatry and Neurology, Inc., 908 F. Supp. 582, 587 (N.D. Ill. 1996); cf. Burlington Industries, Inc. v. Ellerth, 118 S. Ct. 2257 (1998) (analyzing Title VII vicarious liability under agency principles). Kerr argues this point, as she asserts that WGN controlled and interfered with her work environment to the point that WGN is liable under Title VII. (See Pl.'s Resp., pg.8.) The facts do not support Kerr's position.

As discussed above, there is no evidence in the record to support the inference that WGN controlled Kerr's daily activities and her workplace to the extent that it could be considered Kerr's de facto employer. Again, the only control that WGN exerted over Kerr was the control authorized by the contract between WGN and Trio Video. The nature of broadcasting live sporting events is dynamic and involves last second changes in duties. It also places things such as setting schedules beyond the control of production personnel. This does not mean, however, that the broadcast network becomes the de facto employer of everybody involved with the production. Moreover, Kerr was assigned to other broadcast networks in addition to WGN, so her situation is distinguishable from the de facto employment relationship recognized in Sibley. Given the limited amount of control that WGN had over Kerr's daily activities, Kerr cannot proceed on a de facto employment discrimination claim against WGN.

## III. CONCLUSION

For the foregoing reasons, WGN's motion for summary judgment is granted, and Trio Video's motion for summary judgment is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: 7-8-02

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7196 | **DATE** | 7/8/2002 |
| **CASE TITLE** | Katherine Kerr vs. W G N | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

COPY

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] W G N's motion for summary judgment is granted. Trio Video's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| EF | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |